UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
|---|---|---|---|
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

Proceedings:         ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [30]

**I.   Introduction**

Before the Court is a motion for summary judgment filed by Plaintiff Jeffery Werner in this copyright infringement case. Dkt. 30. The only issue contested by Defendant is whether a triable issue exists on its fair use defense. *See generally* Dkt. 32. For the reasons stated below, Plaintiff's motion for summary judgment is GRANTED.

**II.   Factual and Procedural Background**

The parties do not dispute the facts underlying this motion. *See generally* Defendant's Response to Plaintiff's Statement of Facts ("PS"), Dkt. 32-1.

Plaintiff is a professional photographer whose work has appeared in numerous publications and on numerous television shows. *Id.* ¶¶ 1-5. Plaintiff focuses on photographing "dangerous stunts," "exotic animals," "sideshow eccentricities," and "people who have overcome incredible obstacles." *Id.* ¶¶ 5, 7. Every photograph requires many creative decisions about the subject of the photograph, the framing, and the background, as well as decisions about the equipment, the shoot's location, time of day, angle, and lighting. *Id.* ¶ 12.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

Defendant owns and controls the content of two websites, Guff and Memes, which earn revenue through advertising. *Id.* ¶¶ 37-42. In August 2018, a member of Plaintiff's staff discovered several photographs taken by Plaintiff that appeared in articles on Guff and Memes without Plaintiff's permission. *Id.* ¶ 87. The photographs are all registered with the United States Copyright Office. *Id.* ¶¶ 15, 23, 27, 31, 33, 35.

The Images fall into five categories.

- FemSkin: this series depicts a company that "caters to a unique subculture known as 'maskers,' or 'robber dollars,'" men who wear "full body suits to make them look like female dolls." Declaration of Jeffery Werner, Dkt. 30-3 ¶ 17, Ex. 2.

- The Snuggery: this series depicts "a professional cuddler who operates a business called 'The Snuggery.'" *Id.* ¶ 22, Ex. 3.

- Dillie the Deer: this series depicts "a fully domesticated deer that shares a house with her owners." *Id.* ¶ 27, Ex. 4.

- Goatee the Surfing Goat: this series depicts a surfing goat. *Id.* ¶ 32, Ex. 5.

- Giraffe Woman: this series captures a woman "who wears a set of brass rings around her neck in order to deliberately stretch it to look like a giraffe." *Id.* ¶ 37, Exs. 6-8.

Each of these series of photographs "afforded [Plaintiff] a number of lucrative licensing opportunities." Declaration of Jeffery Werner ¶¶ 21, 26, 31, 36, 48.

Photographs from these series were used in seven articles on Defendant's website. Some of the articles contain only one of the photographs with a brief caption. Others contain collections of photographs in list form (including works from other photographers), each with a brief caption. Other articles contain a longer narrative about a topic, with photographs interspersed among the paragraphs.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

Without discussing every article, a few representative examples will suffice. One article entitled, "A Look Inside the Secret World of the Men Who Transform Into Living Latex Dolls," contains several of the photographs in the FemSkin series. Beneath each are one-to-three sentence captions which describe the company and subculture depicted in the photographs. The caption beneath one reads, "Maskers come from all walks of life, like 'Robert,' who is in his 70s. In real life, Robert is a divorced property developer. But when he dons his FemSuit, he is Sherry, a fabulous blonde bombshell." Ex. 9, at 2. Another reads, "There's also an annual 'Rubber Doll World Rendezvous' held in Minneapolis. There, maskers congregate with like-minded folk." *Id.* at 4.

As another example, photographs from the Snuggery series are used in three different articles. An article on the Memes site entitled "The professional CUDDLER who makes $260 a day by inviting strangers to take a nap with her at home," includes two images from Plaintiff's Snuggery series. Ex. 10. The caption reads as follows: "Jackie Samuel, 25, is a professional cuddler and makes up to $200-a-day from her business called The Snuggery in Rochester, New York. She cuddles with up to 30 men a week – including pensioners and war veterans. The cuddling can take place anywhere around her cottage but most clients opt to use her large double bed." *Id.* One of the same Snuggery photographs appears on the Guff site in an article entitled, "Meet 20 People Who Will Give You Job Envy." Ex. 11. The caption in that article is similar, but it adds an introductory sentence – "Sometimes people just need a good cuddle" – and adds a joke at the end – "Just don't fall asleep. You don't want to wake up and realize you accidentally racked up $600 worth of snuggling overnight." *Id.* at 6. A third article appearing on Guff, "Cuddle Cafes Are Becoming Popular in Japan," contains more text, with several paragraphs that describe the phenomenon of cuddle cafes in Japan with some further discussion of the surrounding cultural context. Ex. 12. One of the photographs from the Snuggery series appears at the top of the article but is not referenced in the text. *Id.*

As a further example, Plaintiff's Goatee photograph appears in an article on Guff entitled, "YOU Don't Belong on a Surfboard!" Ex. 13. The caption under Plaintiff's photograph reads, "Well, at least you're wearing a life preserver, but that doesn't change the fact that YOU DON'T BELONG ON A SURFBOARD!" *Id.* at 3.

Defendant does not dispute that it received advertising revenue through each of the articles at issue in this case. PS ¶¶ 49, 55, 61, 67, 73, 79, 85.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
|---|---|---|---|
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

Plaintiff sent three cease-and-desist letters to Defendant between August 2018 and October 2018. PS ¶¶ 93, 97. The images had not been removed as of January 31, 2020, when this lawsuit was filed. *Id.* ¶ 99.

Plaintiff seeks summary judgment on his claim of copyright infringement and on willfulness. Dkt. 30, at 11-18. The only argument raised in Defendant's opposition is that it is entitled to a fair use defense. *See generally* Dkt. 32.

### III. Legal Standard

#### a. Summary Judgment

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
|---|---|---|---|
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

**b. Fair Use**

The Copyright Act provides that the "the fair use of a copyrighted work ... is not an infringement of copyright." 17 U.S.C. § 107. That doctrine is "an equitable rule of reason that permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1196 (2021) (quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990)).

The statute provides that courts may look to the following factors in assessing fair use:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107

These factors are nonexclusive, and "some factors may prove more important in some contexts than others." *Google*, 141 S. Ct. at 1197 (citations omitted). "All [the factors] are to be explored, and the results weighed together, in light of the purposes of copyright . . . to promote science and the arts." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). "The task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis." *Id.* at 577.

Fair use is an affirmative defense, and the defendant therefore bears the burden of proof. *See Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012).

"Where material facts are not in dispute, fair use is appropriately decided on summary judgment." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 800 (9th Cir. 2003).

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

### IV.  Application

#### a.  Purpose and Character of the Use

The "central purpose" of the inquiry under the first factor is whether a work is transformative. *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 452 (9th Cir. 2020). This factor is particularly important because the analysis of the third and fourth factors also tends to turn on this inquiry. *See Dr. Seuss*, 983 F.3d at 451 ("This factor has taken on heightened significance because it influences the lens through which we consider two other fair use factors.").

A transformative work "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at 579. The "benchmarks" of transformative use are (1) a further purpose or different character in the defendant's work, i.e., the creation of new information, new aesthetic, new insights and understanding; (2) new expression, meaning, or message in the original work, i.e., the addition of value to the original; and (3) the use of quoted matter as raw material, instead of merely repackaging it and superseding the objects of the original creation. *Dr. Seuss*, 983 F.3d at 453 (citations omitted).

There are two other considerations under the first factor relevant to this case. First, "[c]ommercial use is a 'factor that tends to weigh against a finding of fair use' because 'the user stands to profit from exploitation of the copyrighted material without paying the customary price.'" *Monge*, 688 F.3d at 1176 (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985)).

Second, news reporting is a potential example of fair use expressly listed in the statute. 17 U.S.C. § 107. However, "[t]he fact that an article arguably is 'news' and therefore a productive use is simply one factor in a fair use analysis." *Id.* at 1173 (quoting *Harper & Row*, 471 U.S. at 561). A defendant's use of a copyrighted image in news reporting will generally not tip the first factor in favor of fair use where the image simply illustrates the subject matter of a report. *See Monge*, 688 F.3d at 1173 (first factor did not favor fair use where defendant published photos of celebrity's secret wedding because "the controversy" creating a news story "ha[d] little to do with the photos"); *Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1121-22 (9th Cir. 1997) (broadcasting footage from

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

Rodney King riots was not a fair use where there was no evidence that defendant treated the tape itself as the news story and "simply used [the tape] as part of [defendant's] coverage of the riots"). For that reason, the purpose of news reporting is weighed in light of the degree of transformation and commercial nature of its use. *Monge*, 688 F.3d at 1173.

Here, Defendant's articles added no new expression, meaning, or message to Plaintiff's photographs. The articles present the subjects of the photographs in precisely the same light as the Defendant did. The Images depict people and animals doing unusual and unexpected things. Many of the captions, and the selection of photographs for particular lists, simply underscores that fact. *See* Exs. 11 (including professional cuddler on list of people with enviable jobs), 13 (exclaiming that goats "don't belong on a surfboard"), 14 (including pet deer in list of exotic pets).

While some of the articles include a longer narrative, the central theme of those articles is the same – to draw the reader into some unusual or unexpected phenomenon or practice. *See* Ex. 9 (titled "A Look Inside the Secret World" of men who dress in feminine latex suits), 12 (noting that "there are some very funny things going on in Japan"), 15 ("Every day you hear about some bizarre body transformations.... The woman in our story wanted to look like a giraffe."). Moreover, those longer articles are focused on explaining the subject matter – the strange phenomena or behavior depicted in the photographs – rather than using the photographs to give them a new purpose or meaning, or as raw material for commentary about the photographs themselves. In fact, the longer articles do not even reference the photographs. *See* Ex. 9 (article about FemSkin images does not comment on or even reference the photos but simply describes phenomenon), 15 (article about giraffe woman does not comment on or reference photos). As discussed above, courts consistently conclude that the use of a photograph to illustrate the subject matter of an article is at best minimally transformative. *See Monge*, 688 F.3d at 1176; *Los Angeles News Serv.*, 108 F.3d at 1122; *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 419 (S.D.N.Y. 2018) ("Stealing a copyrighted photograph to illustrate a news article, without adding new understanding or meaning to the work, does not transform its purpose....").

Although Defendant's articles do contain some written commentary, that commentary is at best a minimally transformative use of the photographs. *See Monge*, 688 F.3d at 1176 ("[W]holesale copying sprinkled with written commentary [is] at best minimally transformative.").

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

That minimally transformative use, however, "is substantially undercut by its undisputed commercial use." *Monge*, 688 F.3d at 1177. As discussed above, it is undisputed that Defendant earned advertising revenue from the infringing articles. Given that Plaintiff selected unique subject matter, and Defendant's articles profit from precisely that character, the commercial use is particularly "exploitative" in this case. *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003).

Accordingly, the first factor is at best neutral and does not support the fair use defense.

    b. **Nature of the Copyrighted Work**

The second factor addresses the creative nature of the copyrighted work and its publication status. *Monge*, 688 F.3d at 1177.

"Works that are creative in nature are closer to the core of intended copyright protection than are more fact-based works." *Kelly*, 336 F.3d at 820 (quoting *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1016 (9th Cir. 2001)). Consequently, "under this factor, the more creative a work, the more protection it should be accorded from copying." *Nimmer on Copyright* § 13.05[A][2][a].

The publication status of a work is relevant because "a copyist's initial publication of the work undermines 'the author's right to control the first public appearance of his undisseminated expression.'" *Dr. Seuss*, 983 F.3d at 456 (quoting *Harper & Row*, 471 U.S. at 554-55). However, the Ninth Circuit has clarified that "the converse is not necessarily true; neither *Harper & Row* nor any principle of fair use counsels that the publication of the copyrighted work weighs in favor of fair use." *Id.* (citation omitted).

"Photos are generally viewed as creative, aesthetic expressions of a scene or image and have long been the subject of copyright." *Monge*, 688 F.3d at 1177; *see also Kelly*, 336 F.3d at 1177 ("Photographs that are meant to be viewed by the public for informative and aesthetic purposes, such as Kelly's are generally creative in nature."). While "candid" photographs benefiting from "fortuitous timing" may be less creative, *see, e.g., Katz v. Google, Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015), that is not an apt characterization of Plaintiff's work. Defendant put forward no evidence suggesting the photographs were the result of fortuity. The only evidence in the record is that Plaintiff's photographs

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

were the fruits of numerous creative decisions, including decisions about the subject matter and composition, as well as decisions about lighting, angles, and equipment. PS ¶ 12. Another court analyzing similar photographs by Plaintiff recognized this factor weighed against fair use because "photographs clearly are recognized as creative expressions that are appropriately covered by copyright." *Werner v. Evolve Media, LLC*, 2020 WL 3213808, at *7 (C.D. Cal. 2020) (citations omitted). Accordingly, the creativity of Plaintiff's work is entitled to strong protection, weighing against fair use.

There is some ambiguity in the record regarding whether the photographs were previously published. Even assuming that the photographs were previously published, that would not necessarily favor fair use. *Dr. Seuss*, 983 F.3d at 456. An author does not lose the right to control future publication of the work simply because the work has been published before.

In light of the foregoing, the Court concludes that the second factor weighs slightly against fair use, further undercutting Defendant's fair use claim *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 744 (9th Cir. 2019) (prior publication of photographs means that creativity "operates 'with less force' in favor of [Plaintiff] ... [and] factor "only slightly favors" plaintiff).

c. **Amount and Substantiality of the Portion Used**

"The third factor asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole ... are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. Courts consider "both the quantitative amount and qualitative value of the original work used in relation to the justification for that use." *Dr. Seuss*, 983 F.3d at 456 (citation omitted). "If the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *Kelly*, 336 F.3d at 820-21.

Considered quantitatively, Defendant admits that each of the articles copied 100% of the photographs they used. Dkt. 32, at 7. Although not dispositive, "[c]opying an entire work militates against a finding of fair use." *VHT*, 918 F.3d at 744 (quoting *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000)). Considered qualitatively, an entire

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

photograph surely includes "the heart" of the work, i.e., "the most valuable and pertinent portion." *Dr. Seuss*, 983 F.3d at 457.

The extreme extent of Defendant's copying must be considered in light of its purpose. This consideration "circles back to the first factor because 'the extent of permissible copying varies with the purpose and character of the use.'" *Id.* (quoting *Campbell*, 510 U.S. at 586-87). As explained above, the first factor was at best neutral, and the articles constituted at best a minimally transformative use of the photographs. The high amount of copying is not justified by significant transformation of the purpose or meaning of the photographs or in its treatment of their subject matter. Moreover, Defendant could have covered the strange phenomena discussed in the articles without photographic illustration, or without including the entirety of the photographs, which were not themselves the focus of the articles.

The third factor therefore weighs strongly against fair use. *Dr. Seuss*, 983 F.3d at 458 (third factor weighs "decisively" against fair use where amount used was substantial and work "could have been created without wholesale copying"); *VHT*, 918 F.3d at 744 (third factor weighed against fair use where "nothing justifie[d] [Defendant's] full copy display of [Plaintiff's] photos"); *Monge*, 688 F.3d at 1179 (factor weighed against fair use where tabloid "used far more [of photographs] than was necessary to corroborate its story").

### d. Effect on the Market

The market effect factor looks at "not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original and the market for derivative works." *Dr. Seuss*, 983 F.3d at 458 (quoting *Campbell*, 510 U.S. at 590). The Supreme Court described this factor as "undoubtedly the single most important element of fair use." *Monge*, 688 F.3d at 1180 (quoting *Harper & Row*, 471 U.S. at 566).

The fourth factor also harkens back to the first. Non-transformative commercial use is likely to lead to market harm to the original. *Dr. Seuss*, 983 F.3d at 459. That is because non-transformative duplication is likely to produce a market substitute for the original, whereas a transformative use is more likely to appeal to new markets. *Monge*, 688 F.3d at 1181 ("[T]he market harm analysis is affected by

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

whether the harm is caused by commercial use of a mere duplicate or by commercial use post-transformation." (citation omitted)).

Here, it is undisputed that Plaintiff has had licensing "opportunities" for the photographs at issue in this case. Plaintiff also operates an editorial syndication agency, which distributes and syndicates his and other photographer's works. PS ¶ 6. The market for licensing reprints of Plaintiff's photographs is therefore surely "more than hypothetical." *VHF*, 918 F.3d at 744.

Unrestricted and widespread conduct of the sort Defendant engaged in would destroy the market for licensing Plaintiff's work. If anyone could reprint Plaintiff's photographs for readers interested in strange and unusual people and images, the licensing market simply would not exist. Because the commentary simply reiterates that the subjects are unusual, Defendant's articles are a market substitute for competing articles and other kinds of reprints. Although Defendant argues that the photographs in the articles may have a lower resolution than a licensee would obtain, they are of high enough quality to get the point across, and Defendant presents no evidence that different markets exist for high- and low-resolution reprints of Plaintiff's photographs.

This factor therefore weighs strongly against fair use. *See Morris v. Young*, 925 F. Supp. 2d 1078, 1087-88 (C.D. Cal. 2013) (fourth factor weighed against fair use because defendant's use was not transformative and could therefore easily supersede the original in the marketplace and "erod[e] its uniqueness").

e. **Balancing**

Considering all the factors together in light of the purposes of copyright, the Court concludes as a matter of law that the undisputed facts do not support a fair use defense. The motion for summary judgment is granted on this basis.

V. **Remaining Issues**

Plaintiff also moves for summary judgment on the copyright infringement claim and on willfulness. Defendant's opposition does not address those issues. *See generally* Dkt. 32. The Court

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

therefore treats the summary judgment motion on those issues as unopposed, and considers whether "the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to" summary judgment. Fed. R. Civ. P. 56(e)(3).

"Plaintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). It is undisputed that Plaintiff owns the copyright in the photographs and that the articles violated Plaintiff's exclusive right to publicly display them. Additionally, Defendant did not dispute that it owns and controls, and uploaded the infringing articles, to Guff and Memes. *See VHT*, 918 F.3d at 731 ("[D]irect liability must be premised on conduct that can reasonably be described as the direct cause of the infringement." (citation omitted)). Therefore, Plaintiff is entitled to summary judgment on his direct copyright infringement claim.

"To prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017). It is undisputed that Defendant received three cease and desist letters notifying it of the infringing articles between August and October 2018, and that the images were still online as of January 31, 2020. Moreover, it is undisputed that Defendant did not license *any* of the photos in the articles at issue in this case (including those from other photographers).

"Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing." *VHT*, 918 F.3d at 749 (quoting *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012)). However, Defendant put forward no evidence to suggest that it reasonably and in good faith believed that it was not infringing. That no licenses were obtained, regardless of the how photographs were used in the articles, strongly suggests that Defendant was not tailoring its usage to its incorrect but good faith understanding of the fair use defense.

Accordingly, the Court concludes that, on this record, summary judgment is appropriate for Plaintiff on the issue of willfulness.

| | : | |
|---|---|---|
| Initials of Preparer | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01024-SVW-AFM | Date | August 9, 2021 |
|---|---|---|---|
| Title | *Jeffery Werner v. Red Blue Media Inc. et al.* | | |

### VI. Conclusion

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment.

The only issue remaining for trial is damages. The Court therefore sets a jury trial on damages for September 28, 2021 at 9:00 a.m. and a pre-trial conference for September 20, 2021 at 3:00 p.m.

IT IS SO ORDERED.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |